Honorable the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw and give their attention, for the court is now sitting. God save the United States and this Honorable Court. Welcome, everybody. We'll hear argument in the first case, 21-1415 Holbrook v. TVA. We'll hear from Appellants' Counsel. My name is Martin Beanstock and I represent Plaintiff David Holbrook in this action. Mr. Holbrook has alleged that he pays an inflated electricity bill each month because TVA is ignoring a statutory directive about how it is required to set his rates. Still, the district court dismissed his complaint because it concluded federal courts do not have jurisdiction to review TVA decisions relating to rates. The district court's decision needs to be reversed. Courts always have jurisdiction to review agency decisions where, as is the case here, Congress has supplied them with a meaningful standard for a court to apply. The second sentence of Section 11 of the TVA Act specifically directs TVA on how to allocate rates between industry and consumers. The second sentence has two parts, a policy directive, a policy statement, and a directive. The policy statement says that when Congress financed the TVA and when it financed its projects, its primary purpose was for the particular benefit of consumers like my client. The directive in the second part says, accordingly, TVA sales to industry shall be a secondary purpose to be utilized to secure revenue returns and load factors, which in turn will produce the lowest possible rates for domestic consumers. And the second sentence uses the word shall and uses it twice. There is no reasonable basis to dispute that this sentence supplies a directive to the TVA. It requires that the TVA, when it sells power to industry, it needs to adjust two factors, load factors and revenue returns, in a way that produces the lowest possible domestic rate to consumers like my client. Just before you get going too far on that, why don't I read the description here, the sentence you're referring to, the clause I guess you're referring to, that talks about the high load factor and revenue returns, which will permit the lowest possible rate. Why don't we view that as a directive instead of a prediction? They're saying by doing this, it will lead to the lowest possible rates, as opposed to a directive to do so. It sounds like a prediction more so than a mandate. I think the mandate lies in the previous clauses. So the will permit is the prediction that if they do this, it will lead to the lowest possible rates. Correct. And it's the prediction of what it is that the TVA is directed to try to accomplish. So it's use these two things in a manner which will permit this outcome. But it's, you know, the other the other term that I think is crucial is the term accordingly. Right. So you begin with the policy statement and then you say accordingly, it shall use sales to industry to be used principally to secure something. So all of that, I think, contributes to the conclusion that this is a directive to TVA on what it needs to accomplish. Mr. Beanstalk, could I ask you about the agency action at issue here? Because this is, I think, part of what's driving my sense for that this is odd. So am I right that the actual specific agency action you're challenging here is an amendment to a contract? No, your honor. Well, what is the agency action that you are challenging? So the complaint specifies at least three instances in which TVA engaged in something it calls a rate change. When it adjusts adjusted the rates that it set for industry and consumers with the purpose of reducing rates to industry and increasing it on consumers. But am I right that when you say they're adjusting rates, they're doing so through their contracts, right? It's not like they're putting out a final rule or an agency adjudication or something like that. It's these rate adjustments happen through the mechanism of the contracts, right? They happen through the mechanism of the contract, but TVA has the authority to set the retail rates. It's within its power to do it and it implements it through this process. In fact, the statute authorizes it. Before you move on that, are you aware of any APA cases where the agency action that's being subject to judicial review is in a contract with a third party? I can't say offhand that I do, your honor. At the same time, I mean, the effect of what it's doing is to require that the rates be set in this manner for the consumer. And in fact, this is what Congress directed it to do, right? But what Congress directed it to do was to create, to utilize the sales to industry in order to generate the revenue returns for the consumer. So Congress has directed it to do that. And the TVA, it is alleged credibly that the TVA is not doing that. So while the form may not be recognizable, it's still violating the directive of Congress as to what it needs to do. Well, can I follow up on your allegation that you're saying they're not doing that because it strikes me that you could be making one of two claims. So one claim that I understand you could be making is that TVA is directed to strike the balance in a certain way and that you think that TVA is just striking the balance wrong. The other thing you could be claiming is that TVA is required to consider a series of things and it's just ignoring one of them. And when I read your blue brief, I see you making the latter argument. I see making both of them, but I see you making the argument of TVA is just literally ignoring one of the things that it's been told it should consider. But then I look at your complaint and I'm not sure that I see that allegation in your complaint. When I read your complaint, I see TVA is just getting the balance wrong type arguments. Could you tell me where in your complaint you think you allege that TVA is literally ignoring a statutorily required consideration? I can't point to the paragraph in the complaint right now, Your Honor. But I do believe that we reference its policy goal of achieving fairness and equity, which is directly in conflict with the statutory requirement that its goal be to produce lowest possible rates for domestic consumers. Well, I understand. I'm asking you on the spot. I know you're going to have some time in rebuttal. That would be very helpful for me if you would be able to identify where you think in your complaint you come closest to alleging not that they're weighing five factors and they're getting the balance wrong, but that they're literally ignoring factor three entirely. It would be very helpful for me to know where in the complaint you say you allege that. Yes, Your Honor. So we do think that under State Farm, Your Honor, they're required that on remand to the district court, the TVA would be required to show both things. TVA is required to attempt to use load factors and revenue returns to achieve lowest possible domestic consumer rates. That's one item that they're required to show under State Farm. And the other is that they need to show a rational outcome, that the rates that were produced are rationally related to the statutory standard. And we believe that they violated both of those things. We've adequately alleged that they violated both of those things. First, like I've said, their policy statements clearly say that they're trying to achieve fairness. And then we've shown that the relative rates that they charge are worse for consumers than even their for-profit peers who have no similar directive. So we think both of those are sufficiently credible to allow the complaint to state a claim here. What if they said, and I get that they didn't articulate it exactly this way, but if they had said, you know, we need to attract business, right? Because business is necessary to create revenue and to create a sufficiently high load factor. And one of the things that businesses look at is whether they're being treated fairly. Because they do not want to be in a place where, or subject to the demands of an energy provider who's not going to treat them fairly. And once they move, they're sort of stuck there. So they want a business or a power company that treats business and consumers fairly. And that's an important thing for businesses to understand. Why wouldn't that be an entirely permissible manner to meet, even if we called this a mandate? Why wouldn't that be an entirely reasonable way of doing that? So if T-BED and… Fairness is bad from your perspective. You're saying they can't consider fairness. I don't, I guess I'm having a little hard time seeing why that's not permitted by the statute. And your honor, I don't think that fairness is bad. I think it's a legitimate policy choice. It's just not the choice that Congress made. Congress said that they need to use the load factors and revenue returns to generate, to secure a lowest possible domestic consumer rates. It's a policy judgment made by Congress. Now, I'm not saying that load factors, that they need not consider load factors and that load factors wouldn't reasonably drive the rates to industry lower and rates to consumer higher. All of that is something for the TVA to present to the district court judge for a decision. But we're not there yet. The district court dismissed the case for lack of jurisdiction. And that's the issue that we're here on. The district court held that the court lacks jurisdiction to review TVA rates because TVA rate setting is unreviewable. And that's just inconsistent with all of the leading Supreme Court and Fourth Circuit decisions that address the issue. TVA rate setting is not an exception to… Client, excuse me. Can't we view the district court's ruling kind of as two pronged? So there's the district court did rule that TVA rate setting is not reviewable and it cites some cases for that proposition. But then the court also ruled that there's no meaningful standards provided in this statute on which you're relying by which to judge. That this statute is, you know, it's setting a policy that speaks in very sort of ambiguous terms about predicting what will happen if we do certain things. And that that's not a standard that judges can measure agency action by. And then those are kind of two separate ways that the district court got to its conclusion. So we don't necessarily have to embrace the idea that all rate setting is off the table in order to agree with the district court that the statute on which you're relying doesn't give us a meaningful standard. Yes, Your Honor. So the meaningful standard courts allow, courts require review if there's any meaningful standard to apply. And under State Farm, that review can be, did they look to those factors to achieve the outcome that Congress required? And at this stage of the proceeding, that's really what we're asking for. We're asking for. But that's, I think that goes back to your conversation with Judge Heitens, that that's not really, you didn't really plead, they didn't look at the right factors case. You pled a case saying that they, they're not doing, they're not charging the rates they're supposed to be charging. They should be offsetting domestic rates with the rates they're charging the industry, not, you know, here's the five factors and, you know, they didn't look at factor three and four. Well, yes, I think that a challenge under the APA should raise both issues and that the court should be allowed, the district court should be requested to look at both of those issues on remand. I think that the district court, as part of its review, should be required to look at both. But again, you have to plead it that way. I don't, again, if you could point to something that would be helpful in your pleading to show that this is a case about failure to consider required factors. I didn't, I didn't find that in your complaint, but that kind of goes back to Judge Heitens' question. Yes, and I would still say that without having looked at the complaint, but even if the complaint only alleges that the outcome was wrong, I think the court, that's, that's a sufficient basis on which to bring the issue up for APA review and that on APA review, it's TVA's responsibility to bring forth both, to show both steps that are complied with the process and that it produced a reasonable outcome. Can I ask a slightly different question? When we talk about rate setting in general, you, you refer us to the, to the FERC cases, but, but FERC is not actually setting rates, they're reviewing rates. So accepting the FERC cases, do you have examples or any example where a court has found rate setting to be reviewable? And, and I'll posit that, that, you know, postal rates, there might be some difference there. We can talk about it if you want to, but are there any other examples where, where government rate setting, not review of, of other rates like FERC, but the rate setting has been reviewed by a court? So I don't have a case offhand, Your Honor, but I'm pretty certain that section 504 of the APA includes rate setting as agency action that's subject to review under the APA. So I think it gets swept in with that, that rubric, that rate setting is subject to review under, under section 504. But, but you're not aware of any instance in which a government entity that's selling something sets a rate in a contract and it's been reviewed. My time is up, Your Honor, but, but no, I'm not aware. Thank you. Ms. Gilland, we're happy to hear from you. Good afternoon, Your Honors. Maria Gilland hearing on behalf of TVA. May it please the court. I'd like to pick up where Judge Heitens went. You're exactly right. The complaint alleges that the resulting rate was incorrect, not that the methodology used to get to that rate was incorrect or failed to consider factors. So that, under this court's precedent, Angelix and Electricities is, is not reviewable. Also, I'd like to point to what Judge Richardson said, which is that it's a prediction, which suggests, as it is, that section 11 is a policy, not a directive. The plaintiff alleged, as Mr. Beanstalk said in his opening, that the rate he pays for electricity is too high. And he asked the district court to order TVA to lower it to some unspecified level, which he didn't indicate. He argues that section 11 entitles him to that rate, which it does not. In order to do so, he has to rewrite section 11. It's not a subsidy mandate, as he argued below, nor is it a directive, as he rebrands his argument for this court. It's a congressional policy statement that, when read with the other sections, 10 and 15D of the Act, guide the TVA board in distributing federal power to meet all of the objectives of the Act. But section 11 doesn't in any way dictate how rates should be structured between various customer classes to meet those policy objectives. Congress left the how to the TVA board. The key that the district court's holding, that rates are not reviewable, was its rejection of the plaintiff's reading of section 11. It correctly observed that the statute simply does not say what the plaintiff suggests it does. The district court should be affirmed. Can I ask you about that? Yes, John. And this is a little bit of a tangent, so I don't want to take up a whole lot of your time with it. But if I agree with you that the statute just doesn't say or require what the plaintiff claims it does, is that a matter of, you know, he's just failed to state a claim because he's saying, you know, the agency failed to do X when the statute doesn't require X? So he's failed to state a claim? Or is that a matter of, as the district court thought, you know, a statute without meaningful standards to be enforced? I agree with you, Your Honor. The line between 12B1 and 12B6 here is a little fine. We moved under 12B1, and the district court decided it under 12B1, finding that there was no jurisdiction, no manageable standards for TVA rate making for the court to review. However, in accordance with this court's precedents, the district court confirmed that there were no improprieties as alleged, and that was the part of the opinion that where he reassured himself of that. So I don't know if that answers your question. I think you had said that before because it's, you said, two ways of approaching it. Can I ask you a question about the, go ahead. Again, I don't want to take a lot of your time, but it is a, I agree with you that it's a kind of a fine line in a case like this where if we disagree with the plaintiff, the statute just doesn't require what you say it requires. You know, that's, it feels a little more like failure to state a claim, right? You're claiming the agency didn't do something that it's not required to do. So, you know, there's no problem here. But, you know, we do have precedent where we deal with cases that are kind of similar to that in the way of saying, well, there's no jurisdiction because we can't impose that sort of standard on the statutes. I think this case raises the question of where that line is. Yes, but, well, not but, but I would look to Angelix, Electricities, and Littel, and they all say that it is reviewable to the extent that any improprieties of the sort that may require review. And so in order to do that, it was necessary to look beyond. I think it could be decided either way. But the standard is the same, I think, under 12B1 or 12B6 at the district court. So I want to ask you about the breach of contract and exaction claims because I agree with you that I think, is this a 12B1 issue? Is it a 12B6 issue? That's maybe a hard question. I don't understand how the district court thought it could dismiss the breach of contract and exaction claims under B1. Because as I understand, the committed to agency discretion by law, the APA creates a cause of action and then claws it back if it's committed to agency discretion by law. But that's an exception to the cause of action under the APA. But the breach of contract and exaction claims aren't APA claims. So I don't understand how a provision that limits the APA can withdraw jurisdiction over those claims. It seems to me that's failure to state a claim, not lack of subject matter jurisdiction. But I guess I want to give you a chance to convince me that I'm wrong about that. Well, Your Honor, and I think that goes to Judge Rushing's question because it hinged on the faulty reading of Section 11. Because necessary for an exaction is an illegal action. And there is no directive in Section 11. So therefore, there was nothing that was illegal about the right. Sure, but that's a 12B6 failure to state a claim. That's not a lack of subject matter jurisdiction because it's committed to agency discretion by law, which is an APA doctrine, not a breach of contract. Correct. In the long run, I don't know. Of course, it matters. Rules matter. But in the scope of review, I don't know that it matters. And it is consistent with what this court has done previously in similar cases to look behind the merits. Did that answer your question, Judge? I take it what you're saying is we should affirm on the alternative basis that it's been dismissed under 12B6 if we agree with the determination that it's not a directive. Correct. Okay. Let me see if there's anything else I need to say. Oh, I did want to go through load factor if it's necessary for the court. As Mr. Geenstock said, there are two factors. I think he said we have to adjust two factors in a way that results in the lowest possible rates. He's ignored and misunderstood load factor to a great extent throughout the lower court in this court. Load factor is a system wide issue, which means that it is not separable by customer class, as he has argued. And it is the average demand for electric power over a specified period divided by the peak demand during that same period. So what that means is that high load factor is essential to making an efficient system and keeping rates low for all. Key to that is industry. As I think Judge Richardson alluded to, it's imperative to be fair to industry so that they are attracted into the Tennessee Valley region to keep load factor high and rates low for all. And the 1938 annual report segment, which we put in the JA at page nine, kind of explains that concept from the early days of TBA. If the court has no further questions, I will sum up. So how about respond to the I asked the question about rate setting. And certainly there seem to be a number of cases that suggest, at least in the examples that we have, that rate setting is not is committed to agency discretion. What's the response to the argument that, well, then why does the APA include rate setting expressly as a rule? So I believe the distinction is that. We're we are a federal entity distributing federal power so that those rates deal with. Rates to private parties, I actually did not was not very successful in finding great cases discussed under that section of the APA, but it it it doesn't apply to the TV act because. So you would then say that that's really referring or at least could be referring to like the first review of rates. So reviews all sorts of rates in its orbit, but they're not its own rates. It's the rates of those that it regulates. Yes, I'm sorry to cut you off. Your honor. Yes, absolutely. And operates under a completely different organic statute. The federal power. So, to sum up plaintiff seeks to override. Override rate making decisions by the TVA board based on an incorrect reading of part of one section of the act. His argument that the TVA act requires rate makings where industrial users subsidize residential users has no basis in text, the structure for the purposes of the act. TVA asks this court to affirm the district court. Thank you. All right. Mr bell. We're happy to hear from you. Yes, sir. I'm may please the court. I'm Cameron. Bella represent the view authority. We are the local utility who Mr Holbrook is the customer of. I don't really have a whole lot to add. I'd be happy to add some loss from the local perspective on both the practicality of some of the things that you have raised and some of the legal issues that have been raised about probably 126. But at the start, the reason that we were here. Mr Beanstalk is correct. What happened was the court ruled in the district court that there was no jurisdiction. All of the cases that have been decided involving TVA on on these types of questions have ruled that there is no law to apply. And therefore, there is no subject matter jurisdiction over the case. And a little bit different geography. And I think that's the only reason that we're here and we're here in the district court in the first place. We're slightly over the Tennessee line and within the 4th Circuit, as opposed to all the other cases in the primary TVA area in the 6th Circuit. But all those cases have decided based on these factors that Section 11 and Section 15 have platitudes and what generally should happen, but not something specific enough to allow a court to say this is what the rate should be. And you'll know in the complaint. And in addition, this is the plaintiff has amended the complaint. The complaint that was dismissed was the second try to state a claim. But what he asked for in the addendum is for the court to award damages. So the district court is supposed to analyze under this platitude framework what the damages to Mr. Holbrook and others of what their rate differences would be. And that's just not what the statute says. That's not what the APA is for. All the cases that have been decided along those lines have held that. So I do think it is a 12B1 question and not a 12B6 question on that basis, but also on practicality, Judge Richardson. So being at the outlier of the TVA area. Somebody in Bristol, which you may know, is on the line between Virginia and Tennessee. They could literally move across the street and have a different power supply. So Bristol Widgets Company is getting charged too much by TVA. They can go somewhere else as easily as moving around the block. And certainly in Washington County, which is also in the service authority, they can go to Appalachian Power and many others easily so that the calculus. And again, this isn't something that I think Congress intended for courts to engage in. But showing the the complicated nature of it all is if we charge Bristol Widgets too much, then Mr. Holbrook pays a little bit less than they move and everybody pays more. So that's in the calculus of what TVA actually did. I don't think that's what the court should review. But that that's the practicality behind all those things. And it's also worth noting that the plaintiff attached 400 pages of things that TVA actually considered. Many of those issues are what the plaintiff is raising now that supposedly were not raised in his brief. Similarly, the plaintiff argues in his brief that the Sixth Circuit and other district courts in the Sixth Circuit gave short shrift to the 12v1 argument. They just sort of cut and pasted earlier decisions that TVA rates were non-reviewable. When in fact, if you look at the Matthews case, for instance, there is a footnote in that case where they read law review articles raising many of the same issues that had been raised in this case. That all said, as to BVU, all we did was supply power to Mr. Holbrook. We're not allowed to make rate determinations. TVA makes those rate determinations. So there aren't any claims that have been stated specifically against BVU in any event. But what Judge Jones decided, I believe, is because. The fundamental question under any of the counts is rate making because under the APA, that isn't reviewable because there isn't a law to apply. Then all the other cases, claims, whatever you call them, all the same thing. The hierarchy is, of course, the court has to analyze jurisdiction first because there is no jurisdiction to read into what TVA sets its rates at or not. Then all the claims have to fall based on that jurisdiction. So that's why he didn't state a claim against BVU. And that's why we would ask that the court affirm the district court's judgment. Happy to answer any questions that your honors have. Seeing nothing. We appreciate it, Mr. Bell. We'll hear from the appellant again. Thank you, Your Honor. I did have a chance to review the complaint. And we do allege in a number of places that TVA did not set rates in accordance with the requirements of the second sentence of Section 11. Not just that its outcomes were wrong, but that its process was wrong and that it failed to consider the appropriate factors. We define on page five the relevant clause in Section 11. We call it the lowest possible domestic rates provision. And then in paragraph 117, we allege that TVA, when it adopted its strategic pricing plan, it neglected to consider in any way the lowest possible domestic rate provision. Paragraphs 110 and 113 addressed in the context of fairness. We say TVA has adopted a policy of fairness, but the process required by second sentence of Section 11 is not fairness. It's lowest possible domestic rate. And in both cases, we say its goals and its goals in paragraph 10 and its description of its purposes in paragraph 110 are not consistent with the lowest possible domestic rate provision, which is the process that's required of it. And, you know, the words are italicized. The words required to consider load factors and revenue returns. And that is a reference to the provision in that section where it was supposed to consider those things, but it didn't. In our cause of action, we have two separate paragraphs, paragraphs 144 and 145. And the first could be read to talk about the level of the rates. But paragraph 145, I think it's that one. I think the first one says it doesn't set rates. It sets rates that were not in compliance with that section. I think that would encompass both of both styles of review. But paragraph 145 says it failed to meet its obligations to set rates in compliance with the lowest possible domestic rate provision. And that's a reference to its process. It's failure to consider the load factors and revenue returns that would produce the lowest possible domestic rates. It's clear on its own, but it's especially clear because elsewhere throughout the complaint, we complain about TVA's purported approach of using fairness when fairness is not what's required under the act. And I acknowledge that it's a policy goal that many of us here might favor, but it's not what Congress directed. Congress directed load factors and revenue returns be used to produce lowest possible domestic rates. TVA is not complying with the statute that Congress established it under. It's violating the law. We have the right to have the district court hear that. Thank you. Thank you, counsel. As you probably know, we would normally come down and shake your hands and thank you in person for your assistance. We can't do that, obviously, but we do appreciate the assistance you've given us and look forward to shaking your hands and doing it in person before too long.
judges: Julius N. Richardson, Allison J. Rushing, Toby J. Heytens